**Larry BULLOCK and Barbara Bullock, Plaintiffs–Respondents,**

v.

**Vito PONTICELLO, V. John Ponticello and Ponticello's Restaurant, Inc., Defendants–Appellants.**

No. 55014.

Missouri Court of Appeals, Eastern District, Division Four.

June 27, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 1, 1989.

Application to Transfer Denied Sept. 12, 1989.

Richard B. Dempsey, Briegel, Dempsey, Baylard & Patane, Union, Mark C. Piontek, Washington, for defendants-appellants.

Gael Davis Wood, Eckelkamp, Eckelkamp, Wood & Kuenzel, Washington, for plaintiffs-respondents.

SMITH, Presiding Judge.

Defendants, Vito Ponticello, V. John Ponticello and Ponticello's Restaurant, Inc., appeal from the judgment of the trial court in a court-tried case.

The lawsuit was brought in two counts. The first count was directed solely against Vito Ponticello. It alleged that on September 1, 1982, plaintiffs and Vito had entered into a lease for certain restaurant property in Washington, Missouri. A provision in the lease required plaintiffs to provide a $20,000 security deposit to be returned upon termination of the lease, subject to certain conditions. Count I alleged that plaintiffs also paid to "defendants" $10,000 to purchase inventory of the restaurant. The lease was terminated on December 31, 1984 for non-payment of rent for three months amounting to $9,000. At that time "defendants" retook possession of the res-

taurant including inventory amounting to $893.34 less than the inventory at the beginning of the lease. Plaintiffs sought from Vito a refund of the security deposit and the value of the inventory pleaded as $9106.66 a total of $29,106.66 reduced by the $9000 in unpaid rent. Nothing in the lease refers in any way to the inventory or the acquisition of the restaurant business. The lease is strictly a lease of commercial property for use as a restaurant.

In Count II plaintiffs sued all three defendants and realleged all allegations of Count I. Additionally, they alleged that they orally agreed to take over the operation of the restaurant operated by defendants and would pay certain debts and obligations of the defendants incurred previously with the understanding they would be reimbursed by defendants. The amount of these payments by plaintiffs was alleged to be $33,048.45. At trial the amount was stipulated to be $23,557.73.

In answer and counterclaim, the counterclaim filed by Vito and the corporation, defendants asserted that in order for plaintiffs to meet the security deposit and for operating capital, plaintiffs borrowed $35,-000 from a bank with Vito as a co-signer on the note. Vito eventually paid the balance due on the note in the amount of $18,032 after termination of the lease. Vito also alleged certain late charges on the note, certain taxes and insurance charges required by the lease and unpaid by plaintiffs. Additionally, defendants Vito, and the corporation alleged that the accounts paid by plaintiffs were in lieu of an agreed purchase price for the restaurant business of $20,000. There were certain other costs those defendants alleged were incurred as a result of plaintiffs' occupation of the premises and operation of the business. Defendants Vito and the corporation alleged that after giving plaintiffs all credits they were owed $28,716.00 by plaintiffs and sought judgment for that amount.

At trial the parties stipulated that Bullocks owed "Ponticellos" the following:

1. $18,032 for the payoff on the note.
2. $3,580 for insurance premiums due and owing when the lease was terminated.
3. $983.45 for past due taxes.
4. $9,000 for rent due.
5. $89.14 for late charges on the note.
6. $241 for a liquor bill.
7. $293 for a telephone bill.

The parties also stipulated that "Ponticellos" owe Bullocks the following:

1. $20,000 security deposit.
2. $118 accounts receivable when the lease terminated.

Upon the remaining matters, no agreement existed except for the amount of accounts paid by plaintiffs for defendants, or at least within a few dollars the parties agreed to an amount.

At trial a dispute arose as to whether the plaintiffs took over operation of the restaurant in August 1981 or September 1982. Defendants contended the former, plaintiffs the latter. There was also disagreement on whether plaintiffs agreed to pay $20,000 for the restaurant business and met this obligation by paying the accounts payable or whether the payment of accounts payable by plaintiff was to be reimbursed by defendants. There was also dispute about the status and amount of the inventory at the commencement of the lease and upon termination. We will not try to explain that dispute.

After trial the court awarded plaintiffs $13,000 on Count I against Vito Ponticello and $16,093.70 on Count II against the corporation.[1] Judgment was rendered on Count II in favor of Vito Ponticello and John Ponticello and in favor of plaintiffs on the counterclaim. Costs were assessed against John Ponticello against whom no relief was granted and who was not a party to the counterclaim. John had originally been the owner of the business but had prior to the lease transferred his one hundred per cent ownership of the stock of the corporation to Vito. Defendants challenge

1. It was stipulated at trial that the corporation had been liquidated prior to trial and that Vito and John should be substituted as statutory trustees. The substitution was ordered by the court. The judgment on Count II is against "Ponticello's Restaurant, Inc."

the judgment on Count I, Count II, and the counterclaim as unsupported by the evidence. We agree.

The difficulty with this case is that the parties, their counsel, and the trial court apparently never realized that the case involved three separate and distinct transactions involving different parties. Throughout the pleadings, the stipulations, the trial and the appeal, the charges and offsets have been treated as flowing from one general transaction rather than from distinct transactions. The lease involved a contract between Vito and the plaintiffs to which John and the corporation were strangers. So also with the bank loan. The acquisition, operation and reacquisition of the restaurant business was a separate transaction between the corporation and the plaintiffs to which Vito and John were strangers in the absence of evidence authorizing a piercing of the corporate veil. Such evidence was not adduced and the court by its judgment on Count II did not find liability by Vito and John for the corporation's activities. We will review the sufficiency of the evidence to support the judgment on the basis of the evidence adduced as applied to the legally separate transactions involved.

We look first to Count I. It involved essentially the transactions between Bullocks and Vito. The parties have stipulated that Bullocks are entitled to return of their security deposit. They have also stipulated that Vito is entitled to repayment of the balance of the loan, and the late charges on that loan, three months rent, the insurance premiums and the taxes. The items stipulated to cover all charges and credits involved in the transactions to which Vito and the Bullocks are the parties. Vito is owed $31,684.59 by Bullocks and they are owed $20,000 by him. Judgment on Count I should have been for Vito and he should have been awarded $11,684.59 on the counterclaim.

Count II involved the transactions between the Bullocks and the corporation. The trial court made no findings of fact and expressed no basis for the judgment it entered. While some of the credits and debits were agreed to, many were not. We are unable to divine from the judgment entered which claims of the parties the trial court has honored and which it has rejected. Nor can we determine the amounts of such claims as were honored. We can assume from the overall judgment in favor of the Bullocks that the trial court accepted the Bullocks' version of the overall transaction. But that said, we still cannot determine what credits or debits or their amounts the court has factually determined should be granted to each of the parties. We therefore must remand Count II and that portion of the counterclaim sought by the corporation for further proceedings.

Judgment is reversed and cause remanded with directions to the trial court to enter judgment on Count I in favor of Vito Ponticello and to enter judgment on the counterclaim in favor of Vito Ponticello and against the Bullocks in the amount of $11,684.59, and for further proceedings on Count II and the counterclaim of the corporation.

STEPHAN and SATZ, JJ., concur.